UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| PATRICK COLLINS, INC., | ) |
| | ) |
| Plaintiff, | ) Case No: 3:12-cv-00574-HLA-JRK |
| | ) |
| v. | ) |
| | ) |
| JOHN DOES 1-32, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DOE 14'S OMNIBUS MOTION TO QUASH, DROP PARTY OR SEVER, AND RECONSIDER ORDER GRANTING LEAVE FOR DISCOVERY, AND MOTION FOR PROTECTIVE ORDER, WITH INCORPORATED MEMORANDUM OF LAW [DKT. 26]**

I.   INTRODUCTION

Plaintiff respectfully requests the Court deny Defendant's motion.  Just three weeks ago, the Honorable Judge Merryday of this District issued an order denying similar motions for a protective order and to dismiss, sever, and quash. "The grounds for each motion are either unfounded or rejected in the other action's July 6th order." Malibu Media, LLC v. John Does 1-55, 8:12-cv-01075-SDM-AEP (M.D. Fl. Sept. 27, 2012), Order DE #34.  Defendant creates a fictional picture of Plaintiff's purpose in an effort to mislead and distract the Court from the serious copyright infringement claim brought by Plaintiff.  Should the Court grant Defendant's motion at this stage of the litigation process, Plaintiff would be left with no way to enforce the statutorily granted exclusive rights afforded to creators of works of intellectual property under the copyright laws of our country.  This would cause severe and irreparable harm to Plaintiff's business as a producer of copyrighted movies.

Defendant's Motion, based significantly on attacks to Plaintiff which are entirely

unsubstantiated, provides no cognizable reason for this Court to disturb its prior finding that Plaintiff has shown good cause to subpoena John Doe 14's identity. After being named in the suit, Doe 14 may assert any number of defenses showing that he did not commit the alleged infringement which may entitle him to being dropped from the litigation. To sever or dismiss Doe 14 at this stage, however, is premature and unwarranted. The Middle District of Florida and the Southern District of Florida have both issued opinions holding joinder is proper in copyright infringement BitTorrent actions at this stage of the litigation process. "As to the issues of severance and dismissal based on improper joinder, the Court finds these issues premature given that the John Doe Defendants have not yet been served with process since their true identities are not currently known to Plaintiff." Malibu Media, LLC v. John Does 1-9, 8:12-cv-669-T-23AEP, *4 - 5 (M.D. Fla. July 6, 2012). Accordingly, Plaintiff respectfully suggests this Court deny the subject motion.

## II.     THIS COURT SHOULD NOT RECONSIDER ITS ORDER

This Court has found that Plaintiff has demonstrated good cause to conduct limited discovery and serve a subpoena on Defendant's ISP because Plaintiff has no other way to identify the defendants and proceed with its copyright infringement case against them. See Order, DE 6. The Court should not reconsider its order. "Reconsideration of a court's previous order is an extraordinary remedy and, thus, is a power which should be used sparingly." Pensacola Firefighters' Relief Pension Fund Bd. of Trustees v. Merrill Lynch Pierce Fenner & Smith, Inc., 265 F.R.D. 589, 591 (N.D. Fla. 2010). "When issues have been carefully considered and decisions rendered, the only reason which should commend reconsideration of that decision is a change in the factual or legal underpinning upon which the decision was based." Id. This Court should not reconsider its order because Defendant has not provided any evidence of a change in

law or fact since this order was granted.

Doe 14's argument that Plaintiff has an alternative means to obtain the information is incorrect. The only way to obtain the identity of an internet subscriber is by subpoenaing the ISP for the subscriber's identifying information. Defendant argues that Plaintiff could obtain the identifying information by filing 32 individual lawsuits against the Doe Defendants and then 32 separate motions for leave to take early discovery. Ultimately, this is a more costly and inefficient means to the same exact end. Because joinder of the Doe Defendants is proper and Plaintiff must subpoena the ISPs to obtain the Does' identifying information, this Court correctly held that "there is no other means available to obtain Defendants' information." Order, DE 6.

### A. <u>Adult Film Content is Copyrightable</u>

Defendant attempts to call into question the copyrightability of Plaintiff's works arguing that this Court should impose a "higher burden" on Plaintiff in order to obtain early discovery. Def's. Mot. Defendant fails to cite any authority for this proposition. Plaintiff's works are subject to the protections of the Copyright Act as evidenced by their registration. "In any judicial proceedings the certificate of a registration . . . shall constitute prima facie evidence of the validity of the copyright." 17 U.S.C. § 410(c). Defendant's argument that "mere registration of copyright of an obscene film does not show whether the alleged work is sufficiently copyrightable" is directly contrary to the law and utterly baseless. <u>See</u> Def.'s Mot. at p. 10.

To except Plaintiff's adult films from the protections of the Copyright Act would be devastating to copyright holders and contrary to the Fifth Circuit's established precedent. The Fifth Circuit, in a lengthy opinion binding on the Eleventh Circuit, expressly held Congress intended for works containing obscenity to be protected under copyright law:

> It appears to us that Congress has concluded that the constitutional purpose of its copyright power, '(t)o promote the Progress of Science and useful

3

> Arts,'U.S.Const. art. 1, s 8, cl. 8, is best served by allowing all creative works (in a copyrightable format) to be accorded copyright protection regardless of subject matter or content, trusting to the public taste to reward creators of useful works and to deny creators of useless works any reward.

<u>Mitchell Bros. Film Group v. Cinema Adult Theater</u>, 604 F. 2d 852, 855 (5th Cir. 1979) (emphasis added).

"Denying copyright protection to works adjudged obscene by the standards of one era would frequently result in lack of copyright protection (and thus lack of financial incentive to create) for works that later generations might consider to be not only non-obscene but even of great literary merit." <u>Id.</u> at 857. Congress carefully determined what should and should not be copyrightable, leaving no room for moral considerations. "[I]t is evident to us that it is inappropriate for a court, in the absence of some guidance or authorization from the legislature, to interpose its moral views between an author and his willing audience." <u>Id.</u> at 861.

### B. Doe Defendants Have a Minimal Expectation of Privacy in the Subpoenaed Information

This Court's Order previously acknowledged that a Doe Defendant accused of copyright infringement has a minimal expectation of privacy in his internet subscriber information. Order, DE 6 ¶ E. It is now well known law that "First Amendment privacy interests are exceedingly small where the 'speech' is the alleged infringement of copyrights." <u>Arista Records LLC v. Does 1-19</u>, 551 F. Supp. 2d 1, 8 (D.D.C. 2008) see also <u>Achte/Neunte Boll Kino Beteiligungs GMBH & Co, KG v. Does 1-4,577</u>, No. 10-453, 2010 U.S. Dist. LEXIS 94594, at *10 n.2 (D.D.C. Sept. 10, 2010) ("the protection afforded to such speech is limited and gives way in the face of a prima facie showing of copyright infringement"); <u>West Bay One, Inc. v. Does 1-1653</u>, 270 F.R.D. 13, 16 n.4 (D.D.C. July 2, 2010) (using the same language as <u>Achte/Neunte</u>, 2010 U.S. Dist. LEXIS 94594, at *10 n.2); <u>Sony Music Entertainment v. Does 1-40,</u> 326 F. Supp. 2d

4

at 567 (First Amendment right of alleged file-sharers to remain anonymous "must give way to the plaintiffs' right to use the judicial process to pursue what appear to be meritorious copyright infringement claims."); Elektra Entm't Group, Inc. v. Does 1-9, No. 04-2289, 2004 WL 2095581, at *4-5 (S.D.N.Y. Sept. 8, 2004) (finding that First Amendment right to anonymity overridden by plaintiff's right to protect copyright).

### III.  THIS COURT SHOULD NOT ISSUE A PROTECTIVE ORDER

"The party 'seeking a protective order carries the burden of showing good cause and/or the right to be protected.'" Nathai v. Florida Detroit Diesel-Allison, Inc., 3:09-CV-1-J-20HTS, 2009 WL 2424570 (M.D. Fla. Aug. 5, 2009). "To make a showing of good cause, the movant has the burden of showing the injury 'with specificity.'" Trinos v. Quality Staffing Services Corp., 250 F.R.D. 696, 698 (S.D. Fla. 2008) (internal citations omitted). Defendant has made no showing of a specific injury that would result absent a protective order and has no valid reason to request one. Defendant makes only conclusory accusations that Plaintiff will harass Defendant based upon the actions of parties in other unrelated cases. Further, since Defendant is represented by counsel Plaintiff is unable to even contact Defendant. Despite the fact that Doe 14 called and left a message at undersigned's office, Doe 14 has not shown any resultant harm or has any reason to believe that any harassment or other improper behavior will result. These unsupported assertions cannot serve as the basis for a protective order.

Defendant is simply seeking a protective order to avoid being sued for copyright infringement. See Voltage Pictures, LLC, v. Does, 1-5,000, 10-cv-00873-BAH, at *6 (D. D.C. Feb. 24, 2011) ("The use of anonymity as a shield from copyright liability is not a motivation that warrants the protection from the Court"). Such a needless protective order would severely prejudice Plaintiff. Without obtaining the identity of the Doe Defendants, Plaintiff cannot

properly proceed with its claim for copyright infringement. If the Court were to withhold Defendant's identifying information, Plaintiff would not know who it is serving and would be unable to verify any asserted defenses. Plaintiff would face countless procedural difficulties.

### A. Plaintiff Intends to Litigate

Currently, Plaintiff is in the process of naming and serving Defendants throughout the country in order to pursue its claims against them. See e.g. Malibu Media, LLC v. Sharon Detweiler, 2:12-cv-04253-ER (E.D. Pa. July 26, 2012); Malibu Media, LLC v. Todd Vancamp, 2:12-cv-13887-PDB-DRG (E.D. Mich. Sept. 4, 2012); Malibu Media, LLC v. Janusz Siembida 1:12-cv-07031 (N.D. Ill. Sept. 4, 2012). Ultimately, the only way that this BitTorrent action may proceed to further stages of the litigation process is for Plaintiff to learn the identities of the Doe Defendants. The subpoenaed information sought by Plaintiff is clearly relevant to this suit as Plaintiff must be able to specifically identify the Doe Defendants in order to properly serve them with process in this copyright infringement action. This Court granted Plaintiff limited discovery to serve a subpoena on Defendant's ISP because Plaintiff has no other way to identify the Defendants and proceed with its copyright infringement case against them. "The information sought by Plaintiff falls squarely within this broad scope of discovery and is therefore warranted in this matter . . . Clearly the identity of the ISP customer is relevant under Rule 26, in that it is "reasonably calculated" to lead to the identity of the infringer whether it is the ISP customer or some other individual." Malibu Media, LLC v. John Does 1-9, 8:12-cv-669-T-23AEP, *4 - 5 (M.D. Fla. July 6, 2012). Defendant's assertion that the subpoenaed information is not relevant to the litigation because it is not for use in the litigation must, therefore, fail.

The District Court for the District of Columbia recognized only a few weeks ago in a similar case that whether plaintiff settles a case or decides that pursuing lawsuits against the defendants

is no longer feasible, "[e]ither course selected by the Plaintiff would give the copyright owner the opportunity to effectuate its statutorily protected rights and thereby serve our system of justice." AF Holdings, LLC v. Does 1-1,058, CIV.A. 12-0048 BAH, 2012 WL 3204917 at *17 (D.D.C. Aug. 6, 2012). The Court explained:

> At this stage, the plaintiff is attempting to identify those infringing its copyright so that it may investigate the feasibility of proceeding in lawsuits against them. <u>That the plaintiff chooses, after obtaining identifying information, to pursue settlement or to drop its claims altogether is of no consequence to the Court. The plaintiff . . . has a right to name or decline to assert claims against defendants whose identities and other relevant circumstances become known to the plaintiff.</u>

Id. at *14. (Emphasis added.)

Defendant mischaracterizes Plaintiff's purpose for engaging in settlement activities, suggesting that simply the fact that a Defendant named in litigation may be offered a settlement constitutes improper litigation tactics and also makes the subpoena overbroad, irrelevant and an undue burden. This is incorrect. Prior to actually proceeding against defendants, it is proper to contact them to discuss settlement options. The only difference between this case and the countless others filed every day by other plaintiffs in a broad array of civil litigation is that the Plaintiff does not have the ability to identify the defendants before the suit is filed.

> <u>The John Doe Defendant's argument about coercive settlements is simply without any merit in those cases where the John Doe Defendant is represented by counsel.</u> And, second, the John Doe Defendants' argument is misguided in that this type of case creates special circumstances that would require judicial review of any motivation to settle, and the Court is not inclined to create a special proceeding to inform any particular John Doe Defendant of a right which is obviously commonly known, i.e. his or her right to defend and litigate this lawsuit.

Id. at *7 (emphasis added).

The Supreme Court has stated that public policy favors resolutions through settlement. "Rule 68's policy of encouraging settlements is neutral, favoring neither plaintiffs nor defendants; it expresses a clear policy of favoring settlement of all lawsuits." Marek v. Chesny 473 U.S. 1, 11

(1985). Further, Plaintiff has a First Amendment right under the petition clause to make the demand. See Sosa v. DirectTV, 437 F. 3d 923, 937 (9th Cir. 2006) (holding "the protections of the Petition Clause extend to settlement demands as a class," including those made during and prior to a suit.)

## IV.     THIS COURT SHOULD NOT QUASH THE SUBPOENA

Rule 45(c)(3) provides that a court must modify or quash a subpoena that fails to allow a reasonable time to comply; requires a non-party to travel more than 100 miles (except for trial within the state); requires disclosure of privileged materials; or, subjects a person to undue burden. See Fed. R. Civ. P. 45(c)(3)(A)(i-iv). The Rule also provides for circumstances in which a court may modify or quash a subpoena. These circumstances are when the subpoena requires disclosure of trade secrets; disclosure of certain expert opinions; or, requires a nonparty to incur substantial expense to travel more than 100 miles to attend a trial. See Fed. R. Civ. P. 45(c)(3)(B)(i-iii). Defendant cannot demonstrate any of the above criteria and therefore has no valid ground on which to argue for this Court to quash the subpoena.

### A.     The CenturyLink Letter Gave Proper Notice

Plaintiff has fully complied with this Court's Order in subpoenaing the Does' identifying information. Before it released the information, CenturyLink notified the Defendant as per its requirements under the law. The mandatory notification was therefore satisfied. Plaintiff has no control over CenturyLink's compliance department or how it responds to the subpoena. Any claimed error or deficiency is attributable only to CenturyLink and Plaintiff should not be prejudiced and prevented from bringing its claim based on the actions of a third party where no harm was done.

Defendant has not indicated that any harm has resulted from his contact with Plaintiff's

counsel's office. The fact that Doe 14 called undersigned's office does not mean that his ability to remain anonymous has been forfeited. Indeed, many cases are settled over the phone by Plaintiff with anonymous Doe Defendants who remain anonymous throughout the communications. Because Doe 14 is represented by counsel any fear of potential future harassment or coercion is assuaged by the fact that Plaintiff may not communicate directly with Doe 14 because he has retained counsel.

### B. Venue is Proper

The Jacksonville Division of the Middle District of Florida is proper because Plaintiff has used geolocation software to determine that Defendant John Doe 1 lives in a city within this division. Defendant argues this Court should dismiss the complaint and quash the subpoena because he or she does not reside within this division. The appropriate remedy for improper venue is to transfer the case, not dismiss it as Defendant requests. See 28 U.S.C. § 1404(a). Fed. R. Civ. P. 45(c) articulates several reasons why a court may quash a subpoena; improper venue is not one of them.

Further, it is not necessary for Plaintiff to bring this case in the division where Defendant resides. "[I]t is not necessary that an action be brought in the division where the defendant resides, when such division is created by rule of court." Manning v. Mundock, 551 F. Supp. 604, 608 (M.D. Fla. 1982). "In order to overcome the presumption in favor of Plaintiff's choice of forum, the movant must show the balance of convenience is 'strongly in favor' of the transfer." Anthony Sterling, M.D. v. Provident Life & Acc. Ins. Co., 519 F. Supp. 2d 1195, 1204 (M.D. Fla. 2007). In determining the propriety of transfer, the court must give considerable weight to the plaintiff's choice of forum." Id.

Here, Defendant has stated that he is not located within the Jacksonville Division of this

district and that the Ocala Division is instead more convenient. The merits of Defendant's claim however cannot be examined until Plaintiff has received Defendant's name and address. At this juncture, Plaintiff is still merely attempting to identify the Defendants. Doe 14 should raise this issue only after Plaintiff has received his identifying information and named him as a Defendant in the action. If at that time Doe 14 can demonstrate inconvenience, the Court should address the issue then. To decide the issue at this stage is premature. Plaintiff respectfully requests this Court allow it to receive the subpoena response from Defendant's ISP so that it may verify Defendant's address and location.

### C. Plaintiff's Only Option to Identify the Infringer is Through His or her IP Address

Defendant's IP address is the only way to identify the infringer. Even if Defendant is not the actual infringer but merely the subscriber of internet service, the infringer was another person who was using the Defendant's internet service. At this stage of the litigation process it is sufficient that Plaintiff's complaint properly pled that Defendant is liable for direct and contributory infringement. These allegations are reasonable because the subscriber is the most likely infringer. The Eastern District of Pennsylvania recently addressed this exact issue of whether the infringer is the account holder of the IP address. The court stated "[t]hese are not grounds on which to quash a subpoena otherwise demonstrated to be proper. The moving Doe may raise these and any other nonfrivolous defenses in the course of litigating the case." Raw Films, Ltd. v. John Does 1-15, CIV.A. 11-7248, 2012 WL 1019067, at *6 (E.D. Pa. Mar. 26, 2012). Further, "although the provision of this information may not directly identify the proper defendants, it is sufficiently tailored to lead to the identification of those individuals." Id. at 19.

### V. JOINDER IS PROPER

Defendant claims that the subpoena requesting John Doe 14's identity is irrelevant because John Doe 14 was improperly joined. Whether or not the defendants are properly joined does not alter the fact that the information requested in the subpoena is relevant. Fed. R. Civ. P. 26(b)(1) permits parties to obtain discovery of "the identity and location of persons who know of any discoverable matter." Fed.R.Civ.P. 20(a) permits joinder when: (1) there is the "same transaction or occurrence" or (2) a "series of transactions or occurrences" or (3) claims upon which the plaintiff asserts the right to relief jointly or "severally" against the defendants. A direct defendant-to-defendant data exchange as alleged by Plaintiff is the "same transaction or occurrence." Rule 20(a) not only permits permissive joinder when there is the same transaction or occurrence, it also permits joinder when a Plaintiff has pled (a) "series of transactions or occurrences" or (b) joint or several liability. Plaintiff has done both here.

"'With the advent of industrialization, high-speed transportation, and urbanization, more intricate disputes appeared with greater frequency,' requiring greater use of the more liberal joinder procedures." Ginett v. Computer Task Group, Inc., 962 F.2d 1085, 1094 (2d Cir. 1992) (quoting 6A Wright, Miller & Kane § 1581). In light of this idea, the Southern District of New York found that "[h]ere, the nature of the technology compels the conclusion that defendants' alleged transactions were part of the same "series of transactions or occurrences." See Digital Sin 176, 2012 WL 263491, at *5. Accordingly, we find that the Rule 20(a)(2) criteria for joinder are satisfied." Malibu Media, LLC. v. John Does 1-5, 1:12-cv-02954-NRB (S.D.N.Y. Aug. 24, 2012) (memorandum and order denying motion to sever and dismiss).

The Middle District of Florida has previously found the actions of the Defendants in copyright infringement cases are sufficient to meet the standards of joinder. See K-Beech Inc., v. John Does 1-57, Case 2:11-cv-00358-CEH-SPC (M.D. Fl. 2011); see also Nu Image, Inc. v.

11

Does 1-3,932, 2:11-CV-545-FTM-29, 2012 WL 646070 (M.D. Fla. Feb. 28, 2012).

> Based on these allegations, the Court finds that <u>Plaintiff's claims against the Defendants are logically related.</u> Each John Doe Defendant is a possible source for the Plaintiff's work, and may be responsible for distributing the movie to other John Doe Defendants, who are also using the same file-sharing protocol to copy the identical copyrighted material.

<u>Id.</u> (Emphasis added.)

### A. The Infringement Occurred Through a Series of Transactions

Under Fed. R. Civ. P. 20(a) "series" has been interpreted by Circuit Courts to mean a "logically related" fact pattern.

> [A]ll 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence. The analogous interpretation of the terms as used in Rule 20 would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding. Absolute identity of all events is unnecessary.

<u>Mosley v. Gen. Motors Corp.</u>, 497 F.2d 1330, 1333 (8th Cir. 1974.

While the logical relationship test does not require it, should this matter go to trial, Plaintiff will prove that the Defendants' infringement was committed through the same transaction or through a series of transactions with mathematical certainty by demonstrating, *inter alia,* that the algorithm used by BitTorrent Trackers would have caused the entire series of transactions to be different <u>but</u> <u>for</u> each of the Defendants' infringements.

#### i. The Supreme Court Allows Joinder When The Defendants Do Not Directly Interact With Each Other

In <u>United States v. Mississippi</u>, 380 U.S. 128 (1965) the Supreme Court found that the joinder of six defendants, election registrars of six different counties, was proper because the allegations were all based on the same state-wide system designed to enforce the voter registration laws in a way that would deprive African Americans of the right to vote. Although the complaint did not allege that the registrars directly interacted with each other, or even that

12

they knew of each other's actions, or that each other's actions directly affected each other in any way, the Supreme Court interpreted Rule 20 to hold a right to relief severally because the series of transactions were related and contained a common law and fact. Id. at 142-143.

> [T]he complaint charged that the registrars had acted and were continuing to act as part of a state-wide system designed to enforce the registration laws in a way that would inevitably deprive colored people of the right to vote solely because of their color. On such an allegation the joinder of all the registrars as defendants in a single suit is authorized by Rule 20(a) of the Federal Rules of Civil Procedure.

Id. at 142. Indeed, the Supreme Court held all of the defendants were joined properly because they were all acting on the basis of the same system which created a transactional relatedness.

Likewise, in the case at hand, it is not necessary for each of the Defendants to have directly interacted with each other Defendant, or have shared a piece of the file with each and every Defendant when downloading the movie. Defendant's argument that joinder is improper because the infringement occurred from different locations using different IP addresses is therefore unavailing. The defendants are properly joined because their actions directly relate back to the same initial seed of the swarm, and their alleged infringement further advances the series of infringements that began with that initial seed and continued through other infringers. The Defendants all acted under the same exact system. Just as it was not alleged in United States v. Mississippi that the registrars shared with each other their efforts to prevent African Americans from voting, it is not necessary for the Defendants to have shared the pieces of the movie with each other. It is sufficient that the Defendants shared pieces that originated from the same exact file, and opened their computer to allow others to connect and receive these pieces.

### B. The Time Period For Infringement

The nature of the BitTorrent protocol provides for continuous seeding and distributing of the movie long after it has downloaded. Without stopping the program by physically un-checking

13

the automatic seeding, an alleged infringer likely will seed and distribute a movie for an extended period of time. As the Eastern District of Michigan explained the technology, even after an infringer has completed a download of the movie, he or she may distribute the movie for weeks after having received the download.

> [I]t is not that an infringer would wait six weeks to receive the Movie, it is that the infringer receives the Movie in a few hours and then leaves his or her computer on with the Client Program uploading the Movie to other peers for six weeks. Because the Client Program's default setting (unless disabled) is to begin uploading a piece as soon as it is received and verified against the expected Hash, it is not difficult to believe that a Defendant who downloaded the Movie on day one, would have uploaded the Movie to another Defendant or peer six weeks later. This consideration, however, is irrelevant since concerted action is not required for joinder.

Patrick Collins, Inc. v. John Does 1-21, 2012 WL 1190840 (E.D. Mich. Apr. 5, 2012). Here, Plaintiff's investigator received a piece of the movie from the defendants when they were allegedly distributing it to others.

The Southern District of New York, in recognizing that the concept of joinder is adaptable to changing technological landscapes impacting the complexity of lawsuits stated, "[w]hile the period at issue may therefore appear protracted by ordinary standards, the doctrine of joinder must be able to adapt to the technologies of our time." Malibu Media, LLC v. John Does 1-5, 12 CIV. 2954 NRB, 2012 WL 3641291 (S.D.N.Y. Aug. 24, 2012) (memorandum and order denying motion to sever and dismiss). The Michigan Court further explained that time constraints should not impact that the infringements occurred through a series of transactions. "[T]he law of joinder does not have as a precondition that there be temporal distance or temporal overlap; it is enough that the alleged BitTorrent infringers participated in the same series of uploads and downloads in the same swarm." Patrick Collins, Inc. v. John Does 1-21, 2012 WL 1190840 (E.D. Mich. Apr. 5, 2012.)

14

### C. There Are Common Issues of Fact and Law

Rule 20(a)(2)(B) requires the plaintiffs' claims against the putative defendants to contain a common question of law or fact. "The Plaintiff meets this requirement. In each case, the Plaintiff will have to establish against each putative defendant the same legal claims concerning the validity of the copyrights in the movies at issue and the infringement of the exclusive rights reserved to the plaintiffs as copyright holders." Nu Image, Inc. v. Does 1-3, 932, 2:11-CV-545-FTM-29, 2012 WL 1255189 (M.D. Fla. Apr. 12, 2012). The "factual issues related to how BitTorrent works and the methods used by plaintiffs to investigate, uncover and collect evidence about the infringing activity will be essentially identical for each putative defendant." Call of the Wild Movie v. Does 1-1,062, 770 F. Supp. 2d 332, 344-345 (D.D.C. 2011).

### D. Joinder Promotes Judicial Efficiency and is Beneficial to Putative Defendant and Doe Defendants Cannot Demonstrate Prejudice At This Stage

Joinder of the defendants creates judicial efficiency, particularly at this stage of the litigation process and is beneficial to the Doe Defendants. "The Court finds that joinder, at this stage of the litigation, will not prejudice any party and will promote judicial efficiency." Patrick Collins, Inc. v. John Does 1-33, 11-CV-02163-CMA-MJW, 2012 WL 415424 (D. Colo. Feb. 8, 2012). The Southern District of New York addressed this issue stating, "courts have opined that requiring aggrieved parties to file hundreds or even thousands of separate copyright infringement actions would neither be cost efficient for the plaintiffs nor promote convenience or judicial economy for the courts." Digital Sin, at FN 6.

Although Doe Defendants may later assert different factual and legal defenses, this does not defeat joinder at this stage of the litigation. "Although it is conceivable that individual Doe Defendants may assert different factual and legal defenses at a later point, "that does not defeat, at this stage of the proceeding, the commonality in facts and legal claims that support joinder

under Rule 20(a)(2)(B)." <u>Patrick Collins, Inc. v. John Does 1-15</u>, 11-CV-02164-CMA-MJW, 2012 WL 415436 (D. Colo. Feb. 8, 2012) (quoting <u>Call of the Wild Movie,</u> 770 F.Supp.2d at 343).

### E. Defendant's Argument Concerning Filing Fees Has Been Rejected

Recently, the District Court for the District of Columbia examined the issue of filing fees in copyright infringement cases in an evidentiary hearing on the issue of joinder. "The Movant ISPs acknowledged that the plaintiff would not be able to protect its copyright if the Court were to sever the unknown defendants in this action due to the cost of filing an individual lawsuit for each of the thousands of IP addresses identified as being used for allegedly online infringing activity. Hearing Tr. at 127–28 (Apr. 27, 2012)." <u>AF Holdings LLC v. Does 1-1,058</u>, CIV.A. 12-0048 BAH, 2012 WL 3204917 (D.D.C. 2012). Judge Howell expressly found that individual filing fees would impossibly burden plaintiff's Petition Clause right.

> Severing the Doe defendants would essentially require the plaintiff to file 1,058 separate cases, pay separate filing fees, and obtain 1,058 separate subpoenas for each of the Listed IP Addresses. <u>This burden for the plaintiff—not to mention the judicial system—would significantly frustrate the plaintiff's efforts to identify and seek a remedy from those engaging in the alleged infringing activity.</u> Moreover, such an outcome would certainly not be in the "interest of convenience and judicial economy," or "secure the just, speedy, and inexpensive determination of th[e] action." <u>Lane,</u> 2007 WL 2007493, at *7 (declining to sever defendants where "parties joined for the time being promotes more efficient case management and discovery" and no party was prejudiced by joinder).

<u>Id.</u> at *13. (Emphasis added).

The District Court of Colorado also addressed the issue of filing fees in copyright infringement actions and noted that requiring a plaintiff to pay the filing fees for each defendant limited its ability to protect its rights, contrary to Fed. R. Civ. P. 1. See <u>Patrick Collins, Inc. v. John Does 1-15</u>, 11-CV-02164-CMA-MJW, 2012 WL 415436 (D. Colo. 2012).

If the Court were to sever the Doe Defendants at this juncture, Plaintiff would

16

face significant obstacles in its efforts to protect the Work from copyright infringement, which would only needlessly delay the suit. Furthermore, Plaintiff would need to file individual cases, which would require Plaintiff to pay the Court separate filing fees in each case, further limiting its ability to protect its legal rights. *See* Fed.R.Civ.P. 1 (providing that the Federal Rules of Civil Procedure should be construed "to secure the just, speedy, and inexpensive determination of every action and proceeding."). Thus, Plaintiff would be substantially prejudiced by severance.

Id. at *3.

Requiring copyright holders to pay a filing fee for each individual infringement impermissibly burdens Plaintiff because it would be unable to bring the petitions that need to be brought. Here, Plaintiff would simply be unable to afford even 1% of the individual actions against infringers each month. Plaintiff would not be able to effectively deter infringement.

### VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the subject motion.

Dated: October 15, 2012

Respectfully submitted,

By: /s/ *M. Keith Lipscomb*
M. Keith Lipscomb (429554)
klipsomb@lebfirm.com
LIPSCOMB EISENBERG & BAKER, PL
2 South Biscayne Blvd.
Penthouse 3800
Miami, FL 33131
Telephone: (786) 431-2228
Facsimile: (786) 431-2229
*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 15, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By: /s/ *M. Keith Lipscomb*